IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARY FREEMAN, on behalf of herself and others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>THE GREAT AMERICAN DREAM, d/b/a Pin Ups, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:24-CV-1198-TWT |

OPINION AND ORDER

This is an employment case. It is before the Court on Defendant The Great American Dream, Inc. ("GAD") and Ashley Fowler's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and to Compel Arbitration [Doc. 24]. For the reasons set forth below, GAD and Fowler's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and to Compel Arbitration [Doc. 24] is GRANTED with respect to the Motion to Compel Arbitration but DENIED with respect to the Motion to Dismiss.

I. Background

This case arises from an employment dispute at an adult entertainment club, known as Pin Ups. Plaintiff Mary Freeman was employed at Pin Ups from approximately 2003 until November 2023. (Compl. ¶¶ 34–35). Defendants GAD and Fowler both owned and managed Pin Ups from an unknown time until approximately August 2023. (*Id.* ¶ 6). Since August 2023, Defendants Slick Vic's LLC and Victor Davidson have managed Pin Ups,

although GAD and Fowler still supposedly retain ownership of the club. (*Id.* ¶ 6). Freeman seeks relief on three claims on behalf of herself and other putative collective action members under the Fair Labor Standards Act ("FLSA"): failure to pay a minimum wage (Count I), failure to pay overtime compensation (Count II), and tip theft (Count III). On behalf of just herself, Freeman additionally seeks relief under the FLSA for retaliatory termination (Count IV). The alleged facts are as follows.

During the three years prior to the filing of her Complaint, Freeman alleges that she and other dancers were not paid properly for all hours worked. In particular, she claims that she and other dancers were "compensated exclusively through tips from Defendants' customers" and that "Defendants paid [them] no compensation whatsoever for the hours she worked at Pin Ups." (*Id.* ¶ 40; *see also id.* ¶¶ 59–60). Rather, she and other dancers were supposedly "required" to pay (1) "a specific amount each shift, referred to as a 'house fee' or 'bar fee,' before being allowed to work" as well as (2) "a separate fee to the house mom each shift." (*Id.* ¶ 42; *see also id.* ¶¶ 43, 49, 59). While employed at Pin Ups, Freeman alleges that she "typically worked five shifts a week and worked 8 to 9 hours per shift." (*Id.* ¶ 38). GAD apparently "kept no records" regarding the tips earned, hours worked, or other payroll information of any dancer. (*Id.* ¶¶ 41, 46–47). Notwithstanding this fact, Freeman alleges that she and other dancers received similar treatment regarding pay, were "employees"

2

as defined by the FLSA, and did not fall under any FLSA exemptions regarding the minimum wage or overtime pay. (*Id.* ¶¶ 36, 44, 63–65, 67). Freeman defines the collective action group as "[a]ll current and former dancers who worked for Defendants at Pin Ups any time starting three years before the filing of this lawsuit to the present." (*Id.* ¶ 71). According to the Complaint, GAD's payment methods were willful, (*id.* ¶ 50), supported by the fact that Freeman "repeatedly raised concerns about the manner she was paid and the mandatory house fees to management at Pin Ups," (*id.* ¶ 51). Regarding the retaliation claim relevant only to Freeman, the Complaint additionally alleges that Freeman complained on November 24, 2023, to the management at Pin Ups about the house mom fee. (*Id.* ¶ 52). On November 25, 2023, Freeman contends that she was fired and told it was "because of her complaint regarding illegal tip sharing." (*Id.* ¶ 53).

Defendants GAD and Fowler now move to dismiss the Complaint for lack of subject-matter jurisdiction and to compel arbitration [Doc. 24]. They claim that, in September 2023, Freeman and GAD entered into an "Independent Contractor Agreement" (the "Agreement") containing an arbitration clause. (Br. in Supp. of Defs.' Mot. to Compel Arbitration, at 2 [Doc. 24-1]). The Agreement contains the following arbitration clause:

> In the event of any dispute or claim between Contractor and Pin Ups Strip Club[ ], including without limitation any claim arising out of [or] relating to this Agreement, Contractor's relationship with or work performed at or for Pin Ups Strip Club, or the

3

>     termination of Contractor's relationship with Pin Ups Strip Club
>     including without limitation any claims for breach of contract,
>     discrimination, harassment, retaliation, failure to pay minimum
>     wage, overtime or other violation of wage and hour laws, family
>     and medical leave laws or other federal, state or local laws,
>     regulations, ordinances or common law)[.] Contractor and Pin
>     Ups Strip Club agree that such dispute or claim shall be fully,
>     finally and exclusively resolved by binding arbitration to the
>     fullest extent permitted by law. The arbitration shall be
>     conducted by the American Arbitration Association[]"AAA)" in
>     Atlanta, Georgia and administered pursuant to AAA's
>     then-applicable Employment Arbitration Rules. Contractor and
>     Pin Ups Strip Club[ ] hereby waive their rights to have any
>     dispute or claim tried to a judge or jury. Further, disputes and
>     claims covered under this provision must be brought on an
>     individual basis. The parties may not submit a class, collective or
>     representative action for resolution under this provision.

(Br. in Supp. of Defs.' Mot. to Compel Arbitration, Ex. 2,[1] ("Agreement"), at 7 [Doc.24-2]). The Agreement additionally includes a merger clause as well as a statement above the signature line in all bold and capital letters that reads: "The parties represent that [t]hey have read this agreement in its entirety, understand[ ] its terms and knowingly and voluntarily accept and agree to be bound by them, including the agreement to arbitrate any and all disputes or claims between the parties." *Id.*

The Court notes that two other individuals, Milagros Rodriguez and Julia Morgan, had consented to joining the suit in addition to Freeman. (*See generally* Pl.'s Notice of Filing Consent to Join, Ex. 1 [Doc. 25-1]; Pl.'s Notice of Filing Consent to Join, Ex. 1 [Doc. 37-1]). Morgan has since withdrawn her

---

[1] The pagination of this document reflects the PDF pagination of Doc. 24-2.

consent, (*see generally* Notice of Withdrawal of Opt-In Consent Form of Julia Morgan [Doc. 41]), but Rodriguez remains a plaintiff. The Defendants have produced an Independent Contractor Agreement for Rodriguez that appears identical in substance to the one produced for Freeman. (Defs.' Suppl. Br. in Supp. of Mot. to Compel Arbitration, Ex. 1,[2] at 6–7 [Doc. 39-1]). Lastly, the Plaintiff moved for the Clerk's entry of default against Defendants SlickVic's LLC and Davidson in October 2024 [Doc. 36]. The Clerk subsequently entered default for SlickVic's LLC and Davidson.

## II.   Legal Standard

On a motion to compel arbitration, a court undertakes a two-step inquiry to determine (1) "whether the parties agreed to arbitrate" the dispute in question and, if they did, (2) "whether legal constraints external" to their agreement foreclose arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Under the first step, the Federal Arbitration Act ("FAA") instructs that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). The FAA "embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th

---

[2] The pagination of this document reflects the PDF pagination of Doc. 39-1.

Cir. 2005) (citation and internal quotation marks omitted). The Defendants appear to argue in their initial brief that the Georgia Arbitration Code rather than the Federal Arbitration Act applies because "the Agreement is governed by Georgia law and does not involve interstate commerce." (Br. in Supp. of Defs.' Mot. to Compel Arbitration, at 4 (citing O.C.G.A. § 9-9-1 et seq.)). This analysis appears incorrect. In addition to citing the Georgia Code for this proposition, GAD and Fowler rely on *Columbus Anesthesia Group, P.C. v. Kutzner*, 218 Ga. App. 51, 53 (1995). As another member of this court explained, however, "more recent and controlling authority mandates a different result." *Price v. Atlanta Fin. Assocs., Inc.,* 2010 WL 11598116, at 2 n.2 (N.D. Ga. Aug. 20, 2010). For example, the Eleventh Circuit in *Caley* rejected the thrust of GAD's argument and applied the FAA, given that Congress's Commerce Clause power extends to activity "affecting commerce." 428 F.3d at 1370 (quoting *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 874 (11th Cir. 2005)); see also *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56–57 (2003) ("Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." (citation, internal quotation marks, and alterations omitted)). That being said, the Defendants acknowledge that the FAA and Georgia Arbitration Code are similar, (Br. in Supp. of Defs.' Mot. to

6

Compel Arbitration, at 5), and the Court is not aware of any reason why an analysis of the present facts would differ between the two.

Under the second step, the FAA provides that an arbitration clause for a "contract evidencing a transaction involving commerce" is enforceable except where "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In other words, an arbitration agreement is "on an equal footing with other contracts" and is enforceable unless a "generally applicable principle of *contract* law" indicates otherwise. *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1231 (11th Cir. 2012) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *Caley*, 428 F.3d at 1371. Courts look to state contract law to determine whether the arbitration agreement is unenforceable as a matter of contract law. *See Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Caley*, 428 F.3d at 1368). When a contract lacks a choice-of-law provision, as here, Georgia's choice-of-law rules dictate that the law of the place where the contract was made governs. *Mbatha v. Cutting*, 356 Ga. App. 743, 750 (2020) (citations omitted). As the parties do not dispute here that the Agreement was executed in Georgia, the Court will apply Georgia contract law. Under Georgia law, a valid contract exists if four elements are met: (1) parties able to contract, (2) consideration, (3) assent by the parties to the contract terms, and (4) a subject matter upon which the contract operates. *Turner Broad. Sys., Inc v.*

7

*McDavid*, 303 Ga. App. 593, 596 (2010) (quoting O.C.G.A. § 13-3-1). A contract is unconscionable under Georgia law only if it is one that "no sane man not acting under a delusion would make and that no honest man would take advantage of." *Innovative Images, LLC v. Summerville*, 309 Ga. 675, 684 (2020) (citation omitted). The party seeking to compel arbitration carries the burden of demonstrating that a valid agreement to arbitrate exists. *Bazemore*, 827 F.3d at 1330 (quoting *Jackson v. Easters*, 190 Ga. App. 713, 714 (1989)).

If the moving party satisfies both steps, the traditional rule is that a court may compel arbitration and either stay or dismiss the suit.[3] *Lambert v. Austin Indus.*, 544 F.3d 1192, 1195 (11th Cir. 2008). However, as the Supreme Court recently held, the FAA "compels the court to stay the proceeding" if one of the parties requests a stay. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); 9 U.S.C. § 3 (providing that courts "shall" upon request stay the proceeding until the arbitration "has been had in accordance with the terms of the [arbitration] agreement").

---

[3] As the Defendants explain, district courts in the Eleventh Circuit have generally treated motions to compel arbitration as equivalent to motions to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). *See, e.g.*, *Coleman v. Dep't Store Nat'l Bank: DSNB Macy's*, 2022 WL 18777575, at *6 (N.D. Ga. Oct. 13, 2022), *report and recommendation adopted*, 2022 WL 18777528, at *1 (N.D. Ga. Nov. 3, 2022); *Stuckey v. Brookdale Emp. Servs., LLC*, 2022 WL 1156962, at *1 (N.D. Ala. Apr. 19, 2022); *de la Riva v. SunTrust Bank*, 2022 WL 3681998, at * 8 (S.D. Fla. Apr. 14, 2022).

### III. Discussion

Although the Court is sympathetic to the Plaintiffs' cause, the Court finds the arbitration clause in the Independent Contractor Agreement (1) clearly applicable to the present dispute and (2) valid under Georgia contract law. All claims presented by the Plaintiffs are thus subject to arbitration.

First, the Agreement clearly applies to the claims in this particular dispute. By signing the Agreement, the Plaintiffs agreed that "any" claim between them and Pin Ups would be subject "fully, finally and exclusively" to "binding arbitration" if it is one "arising out of [or] relating to" their work performed or the termination of their work performed at Pin Ups, "including without limitation any claims for breach of contract, . . . retaliation, failure to pay minimum wage, overtime or other violations of wage and hour laws, . . . or other federal, state or local laws." (Agreement, at 7). Moreover, the Agreement specifically prohibits a collective action suit, which Freeman has brought here. (*Id.* ("[D]isputes and claims covered under this provision must be brought on an individual basis. The parties may not submit a class, collective or representative action for resolution under this provision.")).

Here, the parties disagree only on whether the Agreement—entered into by the Plaintiffs and "Pin Ups Strip Club d/b/a Pin Ups"—binds Defendants GAD and Fowler. If it does, the parties appear to agree that Freeman's claims

9

for failure to pay a minimum wage, failure to pay overtime, tip theft, and retaliatory termination all fall under the broad arbitration clause. Freeman points out that the Agreement "applies only" to disputes "between Contractor and *Pin Ups Strip Club*.'" (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Compel Arbitration, at 2 (citing Agreement)). According to Freeman, "[t]he Agreement makes no reference to either GAD or Fowler, nor does it define Pin Ups to include any affiliates, owners, operators, parent companies or the like." (*Id.*). Freeman cites Georgia law for the proposition that "one who is not a party to an agreement cannot enforce its terms against one who is a party." (*Id.* at 3 (quoting *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1167 (11th Cir. 2011)). She further states that Georgia law recognizes some circumstances in which a non-signatory to a contract may enforce an arbitration clause but that none of those circumstances apply.[4] (*Id.*). In reply, GAD and Fowler argue that Freeman's own Complaint—"[i]n the first paragraph [ ] and throughout"—

---

[4] The Court notes that Freeman raised in her response brief these arguments regarding non-signatories. She appears to assert that GAD and Fowler are not entitled to respond to her arguments in their reply brief, stating that GAD and Fowler "fail[ed] to advise the Court that neither are signatories to the Agreement with Plaintiff" and that they cannot raise new arguments in a reply brief. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Compel Arbitration, at 3–4 & 4 n.1). The Court agrees with GAD and Fowler that they are entitled to reply to Freeman's arguments, as they have done in this case. GAD and Fowler "squarely respond[ ] to the arguments in [Freeman's] response brief" and do not go beyond that which is already stated or implied in their initial brief—that GAD entered into the Agreement with Freeman. *See Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1349 (N.D. Ga. 2017).

acknowledges that "Pin Ups" is a trade name of and synonymous with GAD and that Freeman is estopped from arguing GAD cannot enforce the Agreement. (Reply Br. in Supp. of Defs.' Mot. to Compel Arbitration, at 2–3, 5–8).

The Court agrees with Defendants GAD and Fowler. (*See id.* at 5–8). Freeman's Complaint evinces an understanding that Pin Ups is merely a trade name and not a legally separate entity from GAD. In Georgia, the "doing business as" label connotes a trade name, and a trade name is "nothing more than the alter ego of the individual." *Luster v. First Fin. Asset Mgmt., Inc.*, 2021 WL 8268129, at *3 (N.D. Ga. July 20, 2021) ("The 'doing business as' designation is used as a way of associating a trade name with a corporation where the trade name is a fictitious name that does not have a separate legal existence independent of the corporation it describes." (citation omitted)); *Miller v. Harco Nat'l Ins. Co.*, 274 Ga. 387, 391 (2001) (citation omitted); *see also Purcell v. Allstate Ins. Co.*, 168 Ga. App. 863, 865 (1983) (noting that "[a] trade name is merely a name assumed or used by a person recognized as a legal entity" and that "[a]n undertaking by an individual in a fictious or trade name is the obligation of the individual."). Freeman's own case law appears to acknowledge that an "alter ego" of a signatory may enforce an agreement. *Lawson*, 648 F.3d at 1169. In finding that Pin Ups is merely a trade name, the Court finds the following facts persuasive. The Complaint acknowledges that

11

GAD was "doing business as" Pin Ups and did not name Pin Ups as a separate defendant. The Complaint also states that GAD operated "under the name" Pin Ups, (*see* Compl. ¶ 34), and it uses GAD and Pin Ups interchangeably in describing the entity that employed Freeman, (*compare, e.g.*, Compl. ¶¶ 14, 36 (stating that Pin Ups employed Freeman), *with* Compl. ¶¶ 13, 27–28, 37 (stating that the named Defendants—and not any other legal entities—employed Freeman)). Additionally, while the Defendants carry the burden of demonstrating that the arbitration agreement is binding on the parties, *see Bazemore*, 827 F.3d at 1330 (quoting *Jackson*, 190 Ga. App. at 714), Freeman does not offer any evidence or even suggest that Pin Ups is a legally separate entity. GAD and Fowler meanwhile assert that Pin Ups is not separate and suggest no evidence can show the contrary. (Reply Br. in Supp. of Defs.' Mot. to Compel Arbitration, at 6–7).

Further, equitable principles and the FAA's preference for enforcing arbitration agreements weigh in favor of the Defendants. Equitable estoppel principles suggest that Freeman cannot simultaneously assert that GAD as her employer violated the FLSA and that GAD did not enter into an employment (or purported independent contractor) agreement with her. *See Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079, 1087–88 (11th Cir. 2024); *Devs. Sur. & Indem. Co. v. Carothers Constr., Inc.*, 2018 WL 8996378, at *1 (N.D. Ga. Feb. 27, 2018). And, under the FAA, "any doubts concerning the

12

scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi*, 473 U.S. at 626 (quoting *Moses*, 460 U.S. at 24–25). Thus, Freeman's argument that GAD is not a party to and cannot enforce the Agreement is unavailing; the first step of the motion to compel analysis is satisfied.

Having found the first step satisfied, the Court turns to the second step. The Court finds that the Agreement is valid and enforceable. As required under Georgia law, (1) it appears that all parties were "able to contract"; (2) the parties each received as consideration reciprocal promises to arbitrate; (3) GAD, doing business as Pin Ups, entered into agreements with Freeman and Rodriguez—and supposedly other putative collective action members; and (4) the hiring of an independent contractor is the subject matter upon which the contract operates. *See McDavid*, 303 Ga. App. at 596 (quoting O.C.G.A. § 13-3-1). Moreover, Freeman does not present—and the Court is not aware of—any case law that would hold the present Agreement unconscionable or otherwise invalid or unenforceable.

Because the Defendants satisfy both steps of the arbitration analysis, the Court hereby compels the arbitration of this case. The only question remaining is whether this case should be stayed or dismissed. GAD and Fowler seek dismissal of the case. (Br. in Supp. of Defs.' Mot. to Compel Arbitration, at 5). Freeman requests a stay, arguing that recent Supreme Court precedent

13

interprets the FAA as requiring a stay. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Compel Arbitration, at 4–5 (citing *Spizzirri*, 601 U.S. 472)). As explained above, Freeman is correct: following an order to compel arbitration and upon the request by one of the parties, the Court must stay rather than dismiss the case under the FAA. *Spizzirri*, 601 U.S. at 478. The Court thus grants a stay of the present proceeding until further order of this Court finding that the required arbitration "has been had in accordance with the terms of the [arbitration] agreement." 9 U.S.C. § 3.

## IV.   Conclusion

For the foregoing reasons, Defendant The Great American Dream, Inc. and Ashley Fowler's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and to Compel Arbitration [Doc. 24] is GRANTED with respect to the Motion to Compel Arbitration but DENIED with respect to the Motion to Dismiss. The Plaintiffs are DIRECTED to submit their claims to arbitration, or they will be deemed abandoned. This matter is hereby STAYED until further order of the Court. The Clerk is DIRECTED to close this case administratively.

SO ORDERED, this ___5th___ day of December, 2024.

*[signature]*
THOMAS W. THRASH, JR.
United States District Judge

14